The whole subject is fully and ably examined by Duncan J., who delivered the opinion of the Court.
On this bill of exceptions, one precise question of law arises for our consideration.' It is this: was the tract of land patented to the defendant, the vacant land of the State on the 3d April, 1792, and as such, open to settlsment ? This will depend on the construction of the several acts of assembly respecting the donation lands set apart by the State, *157 for her line in the army of the United States. These acts are not free from obscurity. The provisions made at different times for the completion of these grants, may, in considering them separately, present apparent difficulties and inconveniences; but the whole are to be taken in conjunction, as forming one system, and are to be viewed together, to be reconciled as far as they possibly can on any reasonable construction, keeping always in view the general intention of the Legislature.
It may be proper to premise, that there is no limitation from time, affecting the particular grant of the defendant, the time being extended until 1st April, 1810. It is founded on a resolution of the Legislature of 7th March, 1780, ascertaining the quantity of land to be granted to each officer and soldier. In pursuance of this resolution, on the 12th March, 1783, an act passed, (2 Sm. L-. 63,) locating and laying off a certain tract of country, including the land in dispute, which was reserved and set apart for the only and sole use of fulfilling and carrying into execution, the said resolution. On the 24th March, 1785, an act passed, (2 Sm. L. 290,) directing the mode of distribution of the land thus set apart, and declaring, that the lands were exclusively for the purpose of fulfilling the donation promised to the troops of the Commonwealth. By the 1st Section of this act, the surveyor general was required, forthwith, to appoint deputies, for the purpose of surveying and laying off lots in the said tract of country, which deputies were to follow such directions and instructions as they might receive, from time to time, from the Executive Council and surveyor general. By the 9th section, the comptroller general w'as required forthwith to form complete lists of the persons entitled, annexing their rank, and the quantity to which they were entitled, and lay the same before the Council, who were directed to order the surveyor general to instruct his deputies what number of lots to survey and in what quantities to lay them off. By the 10th section, the deputies were directed to divide the land into lots of four descriptions, containing different quantities, and transmit copies of their field notes, with the drafts and returns, to the surveyor general. By the 11th. section, the surveyor general was required to instruct his deputies to make the classes in numerical order. By the 12th, the surveyor general is directed, when a sufficient *158 number of lots are surveyed and returned, to cause a draft to be made of the whole, noting on each the number thereof, to be kept by the council until all the applications shall be satisfied. By the 13th section, the Council shall cause numbers correspondent to the four classes, to be made on pieces of paper, roll, and bind them up, and deposit them in four lottery wheels, and the applicants from time to time, are permitted to draw, under the direction of a committee of three of the Council; and by the 14th section, it is provided, that patents shall issue to the applicants for the numbers they draw. By the 17th section, ‘after the expiration of the period allowed for drawing, the residue of the lands shall be advertised and sold, under the direction of the Council, for the use of the State. By the 19th, 20th, 21st, 22d, and 24th, sections, provision is made for the appointment of an agent, to explore the country.to be laid off, agreeably to the directions of the act, who is to note the quality of the land, the hills, mountains, waters, &c., but particularly, the parts of the land which he may deem unfit for cultivation, which notes or description of the country, are directed to be published by the Council, as soon as possible; and by the 24th section, it was enacted, that the surveyor general should appoint a sufficient number of deputies to have the whole tract surveyed and returned, before the 1st February, 1786, and the agent was directed to report to the surveyor general from time to time, if any of the deputies should neglect or delay the performance of their duties.
On the 26th March, 1785, General William. Irvine was appointed the agent, and on the 17th August, he made a report to the Council, in which he states, that from six miles east of M'-Lean’s line, to the Allegheny river, about twenty five miles due east, is bad land, unfit for cultivation. In this description of bad land, is included a part of the second donation district, comprehending the land in dispute.
The acts of 30th September, 1791, and 10th April, 1792, and 5th April, 1793, (2 Sm. L. 295. note,) relate to such numbers as had been found to fall within the State of New Tork.
By the act of 6th April, 1792, (2 Sm. L. 296. note,) the land officers are to draw lots of all persons entitled, who had not applied; any lands unapplied for within the term of two years, to be disposed of agreeably to the regulations of *159 the act for the sale of the vacant lands within this Commonwealth. By the act of 17th April, 1795, sect. 6. (3 Sm. L. 233.) it is provided, that after the expiration of the respective periods for making applications, so much of the donation lands for which no applications shall have been made, may be disposed of in such manner as the Legislature shall in future direct. By the act of 11th April, 1799, ( 3 Sm. L. 383,) it is declared, that the residue of lands theretofore appropriated for satisfying claims to donation lands, should revert to the Commonwealth, and be disposed of in such manner as should be directed by law, in relation to other lands, the property of the State.
The act of 2d April, 1802, (3 Sm. L. 505,) is general, and applies to all who were entitled to donation lands. The preamble, taken in connection with the enacting clauses, sheds much light on this enquiry. The preamble states, that some of the late officers and soldiers of the Pennsylvania line, have not received their donation lands, and that it has been represented, that among the lots in the Tenth Donation District, which the owners have released as being in the State of New Tork, and for which they have received other lots in lieu thereof, many are still in Pennsylvania; and also, that a number of lots may yet be found within the bounds of the donation surveys, not numbered or returned as donation lands, nor other wise appropriated, the enactment is, that the land officers shall ascertain the number of undrawn and unappropriated lots, and put into the lottery box correspondent numbers, and shall proceed to draw therefrom, from time to time ; the first applicant to be entitled to the first draft. By the second section of the act, the surveyor general is required to ascertain with accuracy, all the lots within the Tenth Donation District, reported as falling within the State of New Tork, and as such released, which may still be within the State of Pennsylvania., or in the triangle purchased from Congress, and to procure returns of all other lots which are included within the general drafts of any of the donation districts, which are not otherwise appropriated ; which said released lots, or other lots, as soon as the surveys of them are made and returned, shall be made use of to supply the lottery boxes with a sufficient number of tickets to carry the design of the act into effect. But this act provides, that no lot to be drawn, or patent issued, in pursuance of that act, shall interfere with, *160 or defeat, any prior title which may have been acquired un« der the authority of any former law of this Commonwealth.
It would seem to be admitted, that the report of Geni. Ir-’sine, had been adopted and acted- upon by the Council, and that no lot in the second donation district, called the Struck District, which had been reported unfit for cultivation, had been put into the lottery wheel by them ; but that under the act of April, 1802, they had been numbered and put into the wheel by the officers of the board of property. This would likewise appear, by the preamble to the act of 25th March, 1803, (4 Sm. L. 223,) which recites, that sundry lots of donation land had lately been drawn and patented, situate within the easternmost part of the second donation district, which were theretofore left out of the wheel by the Executive Council, on the report of their agent, Geni. Irvine; and then proceeds to state, that large and valuable improvements had been made thereon, under the act of 3d of April, 1792. It is then enacted, that the said land officers shall take out of the wheel, all tickets for donation lands in the easternmost part of the Struck District, which lands shall be reserved for the actual settlers, and that any person holding a donation patent, within those bounds, on releasing his patent, shall have another unappropriated lot free of expense.
By the act of 26th March, 1813, (Pam. L. 187,) it is enacted, that donation lands undrawn on the 1st of October next ensuing, shall be patented to the settlers on certain conditions, and at the rate of one dollar fifty cents per acre.
The first impression on my mind, and that which continued until the argument was closed, was that no part of the tract of country set apart under the act of 1785, was to be considered as vacant land, and subject to disposition -under the act for the sale of the vacant lands of the Commonwealth ; and that, although Geni. Irvine’s report had been acted upon by Council, and these lands not the subject of donation draft, still they were to be disposed of, either by public sale, according to the provisions of that act, or by some future law, passed for that purpose ; and as this had not been done, the plaintiff was not entitled to recover. A very attentive and minute examination of all the complex provisions of the several acts, has fully satisfied my mind that this impression was erroneous, and that taking into consideration all these acts, without any strained construction, the whole will *161 be found to form a consistent plan, not in any degree violating the right of any one.
It is plain that the Legislature never intended to break the promise of bounty to the officers and soldiers to the heart, by a performance to the ear; to discharge that promise by a donation of uncultivable lands. It was for the purpose of fulfilling it by a just performance, that an agent was to be appointed, whose duty it was to explore the whole tract, and report what part of it was unfit for cultivation. He did só, .and those whose.duty it was made, the executive branch of the Government, rejected'that part s0 reported, as unfit for cultivation; rejected from distribution the land in dispute. That district of land, reported as. unfit for cultivation, was afterwards known by .the ríame óf the Struck District, and by this rejection, that part of it ceased .to be donation land, or the subject of .distribution under the donation law, until the passage of the act of 1802, which restored it again to the denomination, .in which class it remained until the act of 1805 withdrew it once more from distribution,' and. restored it to the State, as part of the common mass of vacant and unappropriated lands, to be granted, however, to settlers alone, and at a price greatly beyond the usual purchase money.
These lands, on thé adoption of the report of the agent, acted upon by the executive power, thus became the vacant lands of the Commonwealth, under the act of 3d April, 1792, for the sale of the vacant lands of the Commonwealth, and were offered for settlement and sale. They were not included within the exception of the second section, excepting such parts as were, or should be appropriated to any public or charitable use, because they, had been rejected as worthless; they were offered for sale to persons who would cultivate and improve them, at the rate of seven pounds, ten shillings, per hundred acres, and what proves this in the most conclusive manner is, that four days after the passing of the act for the sale of the vacant lands within the Commonwealth, the same Legislature, with the provisions of, that act fresh in their minds, legislating on the subject of donation lands, enact, that any donation lands not applied for within two years, should be disposed of agreeably to the regulations of the act for the sale of vacant lands.
*162 It is true, the Legislature, in extending further limits, make a new provision for the disposition of lands not applied for within the prescribed time, by the acts of 1795, and 1799; not that they shall be disposed of as vacant lands, but disposed of, as future laws shall direct. But this is not inconsistent with our view of the system, as it relates only to the lands not excluded by the executive council from distribution on the report of the agent. If this be a correct view of the subject, then in 1792, these struck and neglected íands had been withdrawn from distribution; withdrawn in favour of the donees, as unfit for cultivation,- oh the report of one of their own body, under the provisions of the law of 1785'; and while in that state, withdrawn as of no'-value by the donors and' the donees, and not appropriated to any public or charitable use, the plaintiff acquired a right by settlement. Nor could they be restored by the act of 1802, by relation back to 1785, the time of the grant, so as to affect the rights of the settlers, and the Legislature provide against such conclusion., by providing, that no lot to be drawn in' pursuance of that act should interfere with, or defeat any prior title acquired under any former.-law of the Commonwealth; thus combating, by legislative declaration, the position assumed by the Council, that there might be rights under laws of the Commonwealth, and which rights could only exist under the act of 3d April, 1792, there being no other law' for the disposition of these lands. Such'patents for lands in the Struck District, founded on the act of 1802, obtained when there had been no "previous settlement, would give title, but where there had been such settlements, they could not affect them by relation to.the,„act of March, 1785; such conclusion is excluded, by the express provisions in the act.
The act of 26th March, 1813, relates only to the settlers on donation lands, undrawn on the 1st October, 1813.
The land, on the report. of an authorised agent, one of the d.onees, was withdrawn from distribution by the Executive Council, having power to do so; leaving sufficient to fulfil the grant of the Legislature to this description of most meritorious citizens, and although the lands may, on a fuller exploration and knowledge of the country, be now considered as of value, that can have no operation-; they were rejected, as unfit for cultivation, by an agent of great fidelity, one of the donees ; the agent in point of law, as likewise, as *163 is fairly to be deduced from their situation^ in point of fact, the agent of both parties. ■
Did the subsequent acts interfere with the vested rights of the patentees under the act'of 1785, they could not be sanetioned. Did they deprive the soldier of his promised reward, they would be scanned with a just regard to his rights, and the injunctions of the Constitution. But they do not this. So far from it, if they received any other construction than what we how have declared tobe the just interpretation, they would interfere with the rights, of the plaintiff, who settled on this land, under a law authorising him to do so, and granting him the right of pre-emption. ■
On the fullest consideration of the various acts of assembly, the- Cpurt have arrived at a result satisfactory to their minds, that the tract of land, when settled by the plaintiff, was the vacant land of the Commonwealth ; that under the act of 3d Aprils 1792, he acquired a right to it, which could not be affected by the subsequent patent of the defendant. For these reasons, the judgment is reversed, and a venire facias de novo awarded.
Judgment reversed, and a venire facias de'novo awarded.